# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOHN TIMOTHY HODGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:17CV678 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND RECOMMENDATION**
## **OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, John Timothy Hodge, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI. (Tr. 201-11.) Upon denial of those applications initially (Tr. 72-98, 126-33) and on reconsideration (Tr. 99-125, 138-46), Plaintiff requested a hearing

de novo before an Administrative Law Judge ("ALJ") (Tr. 147-48). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 41-71.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 21-35.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 18-20), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2012.

2. [Plaintiff] has not engaged in substantial gainful activity since June 1, 2012, the alleged onset date.

3. [Plaintiff] has the following severe impairments: mood disorder, post-traumatic stress disorder (PTSD), degenerative disc disease of the lumbar spine and degenerative joint disease of the right knee.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . in that he can lift and carry 50 pounds occasionally and 25 pounds frequently. He can stand or walk 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally stoop and kneel. He should avoid concentrated exposure to extreme heat and cold, unprotected heights, excessive

vibration and hazardous machinery. He is also limited to unskilled work only.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from June 1, 2012, through the date of this decision.

(Tr. 26-34 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are

supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a
(continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

**B. Assignments of Error**

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "the ALJ did not give a complete function-by-function analysis of the nonexertional mental functions associated with

---

[3] (...continued)
"physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[Plaintiff's] difficulties in the broad areas of functioning and did not make a complete finding as to [Plaintiff's] mental [RFC]" (Docket Entry 12 at 2 (bold font and single-spacing omitted)); and

2) "the ALJ did not provide the required narrative description forming a bridge from the medical evidence to the RFC" (id. at 7 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 4-14.)

### 1. Mental RFC

In Plaintiff's first assignment of error, he alleges that "the ALJ did not give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning and did not make a complete finding as to [Plaintiff's] mental [RFC]." (Docket Entry 12 at 2 (bold font and single-spacing omitted).) First, Plaintiff contends that, at step three, the ALJ found that Plaintiff suffered no limitation in his ability to perform daily activities and to function socially (see Tr. 27-28), "[b]ut later in the decision the ALJ sa[id] [Plaintiff] ha[d] mild limitations in activities of daily living and social functioning" (Docket Entry 12 at 3 (citing Tr. 32)). Second, Plaintiff maintains that, "[d]espite finding [Plaintiff] ha[d] moderate limitations in concentration, persistence, or pace [('CPP')]" (id.), the ALJ failed to "make a finding as to [Plaintiff's] ability to stay on task" in the RFC in

8

violation of Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"), and <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015) (Docket Entry 12 at 4 (bold font omitted)). According to Plaintiff, "[t]he ALJ mistakenly discussed only [Plaintiff's] capability to perform unskilled work" (<u>id.</u> at 5), and "left the Court to guess" why Plaintiff's moderate limitation in CPP "did not warrant further limitation in the [RFC]" (<u>id.</u> at 6). Plaintiff's contentions do not warrant relief.

Plaintiff initially faults the ALJ for finding, at step three, that Plaintiff suffered <u>no</u> limitation in his ability to perform daily activities and to function socially (<u>see</u> Tr. 27-28), but, when determining the RFC, stating that Plaintiff's "ability to engage in and complete [various household and social] tasks [wa]s inconsistent with more than <u>mild</u> limitations in activities of daily living and social functioning" (Tr. 32 (emphasis added)). (Docket Entry 12 at 3.) Although the ALJ's two statements regarding Plaintiff's limitations in daily activities and social functioning do <u>arguably</u> conflict with one another,[5] that conflict remains harmless under the circumstances here. <u>See generally</u> <u>Fisher v. Bowen</u>, 869 F.3d 1055, 1057 (7th Cir. 1989) ("No principle of

---

[5] The two statements do not necessarily conflict because one who has no limitations in a particular area also does not have more than mild limitations in that area and, conversely, one who does not have more than mild limitations in an area <u>may</u> have no limitations in that area.

9

administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."). Even assuming, arguendo, that the ALJ should have found at step three that Plaintiff suffered from mild limitation in daily activities and social functioning, Plaintiff has not made any attempt to show how mild limitation in those functional areas would have compelled the ALJ conclude that Plaintiff met a listing; nor has Plaintiff developed any argument that such mild limitation required the ALJ to adopt further mental restrictions in the RFC. (See Docket Entry 12 at 3.) The Court thus need not discuss this matter further. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A party should not expect a court to do the work that it elected not to do.").

Regarding Plaintiff's CPP-based argument, the United States Court of Appeals for the Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] *always* translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced," because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions). Here, the ALJ's decision provides a sufficient explanation as to why restrictions to unskilled work (see Tr. 29) sufficiently accounted for Plaintiff's moderate deficit in CPP.

First, the ALJ discussed Plaintiff's statements that he felt "hopeless, helpless, worthless, and useless secondary to his alleged physical limitations" and "reported limited socialization and poor attention secondary to severe pain." (Tr. 31.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms not entirely

11

consistent with the medical evidence and other evidence in the record for the reasons discussed" in subsequent portions of the decision. (Tr. 29.) Moreover, as discussed below, Plaintiff's cursory challenge to the ALJ's assessment of Plaintiff's subjective symptoms (see Docket Entry 12 at 10-11) lacks merit.

Second, the ALJ summarized Plaintiff's medical treatment, making the following, pertinent observations:

- Plaintiff "is only prescribed Prozac by his primary care provider, and [Plaintiff] testified he receive[d] some symptom relief with medication management" (Tr. 31; see also Tr. 51, 59);

- "Plaintiff ha[s] no history of inpatient psychological treatment, and he denied suicidal thoughts" (Tr. 31-32);

- Plaintiff's "primary care provider only observed a normal mood, affect, and psychomotor activity" (Tr. 32; see also Tr. 320);

- "A psychological consultative examiner observed a depressed mood and flat affect, but [Plaintiff] made fair eye contact, was pleasant and cooperative, interacted well with office staff, . . . exhibited normal cognitive functioning with an average intelligence, . . . [and] was able to recall three digits forward and three digits backward, perform serial sevens, . . . [as well as] recall three out of three objects immediately and after a delay," and such "minimal clinical signs and findings [we]re inconsistent with disabling mental impairment or with more than moderate limitations in the ability to maintain [CPP]" (Tr. 32 (emphasis added); see also Tr. 337-38); and

- Plaintiff's "activities of daily living also suggest his psychological symptoms are not as limiting as alleged," as Plaintiff "denied difficulty following instructions, and he indicated he could manage his finances, cook, drive, shop,

12

> care for his dogs, and perform personal care without reminders" (Tr. 32; see also Tr. 262-67).

The ALJ noted that he "accommodated [Plaintiff's] moderate difficulties in maintaining [CPP] by limiting him to unskilled work only." (Tr. 32.)

Third, the ALJ discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 32-33.) In that regard, the ALJ gave "some weight" to the state agency psychological consultant at the initial level of review (Tr. 32), who found that, notwithstanding moderate limitation in CPP (see Tr. 87), Plaintiff remained able to understand, remember, and carry out very short and simple instructions (see Tr. 91, 92) and perform simple, routine, repetitive tasks ("SRRTs") (see Tr. 88).[6] The ALJ then gave "more weight" to the state agency consultant at the reconsideration level of review (Tr. 33), who similarly found that, despite moderate difficulty in CPP (see Tr. 116), Plaintiff remained "capable of at least SRRTs" (Tr. 116 (emphasis added); see also Tr. 120).

Under these circumstances, the ALJ adequately explained why a restriction to unskilled work (see Tr. 29) sufficiently accounted for Plaintiff's moderate limitation in CPP. See Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) (rejecting the

---

[6] The ALJ noted that he "assign[ed] no weight to the initial [consultant's] opinion that [Plaintiff] would need a workplace setting with minimal social demands because th[at] opinion [wa]s inconsistent with [Plaintiff's] ability to interact with friends and family and his ability to shop." (Tr. 32.)

13

plaintiff's argument under Mascio where ALJ relied on opinions of consultative examiner and state agency psychologist that, notwithstanding moderate deficit in CPP, the plaintiff could sustain attention sufficiently to perform SRRTs).

### 2. Bridge between Evidence and RFC

In Plaintiff's second and final assignment of error, he contends that "the ALJ did not provide the required narrative description forming a bridge from the medical evidence to the RFC" in violation of SSR 96-8p. (Docket Entry 12 at 7 (bold font and single-spacing omitted).) In particular, Plaintiff asserts that "the ALJ merely found [Plaintiff] limited to unskilled work with no determination of [Plaintiff's] ability to stay on task and no explanation of how the medical evidence led to [the ALJ's] conclusions." (Id. at 8; see also id. at 9 ("[T]he ALJ found the evidence shows that [Plaintiff] has some difficulty in sustaining focus[,] attention, and concentration in a work setting, but the ALJ did not make a finding of [Plaintiff's] ability to stay on task or explain how this effects [sic] his [RFC]." (internal citation omitted)).) Plaintiff additionally faults the ALJ for "g[iving] some weight and more weight to the [state agency] psychological consultants' opinions," who each "opined [Plaintiff] [wa]s limited to very short and simple instructions" (id. at 9 (citing Tr. 91, 119)), "[b]ut in the [RFC] the ALJ did not limit [Plaintiff] to very short and simple instructions nor did [the ALJ] explain why he

14

did not so limit [Plaintiff]" (id. at 9-10). Lastly, Plaintiff maintains that "[t]he ALJ's assessment of the severity of [Plaintiff's] symptoms [wa]s also deficient under [Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ('SSR 16-3p')]." (Id. at 10.) Plaintiff's assertions fall short.

As an initial matter, Plaintiff raised the argument that the ALJ failed to address Plaintiff's ability to stay on task in the RFC in connection with his first assignment of error (see id. at 2-7) and, for the reasons discussed above, that argument does not entitle Plaintiff to reversal or remand. Plaintiff next faults the ALJ for "g[iving] some weight and more weight to the [state agency] psychological consultants' opinions," who each "opined [Plaintiff] [wa]s limited to very short and simple instructions" (id. at 9 (citing Tr. 91, 119)), "[b]ut in the [RFC] the ALJ did not limit [Plaintiff] to very short and simple instructions nor did [the ALJ] explain why he did not so limit [Plaintiff]" (id. at 9-10). Plaintiff's argument misses the mark for two reasons.

First, Plaintiff glosses over the fact that, although both state agency psychological consultants found that Plaintiff remained "able to carry out very short and simple instructions" (Tr. 92, 119), those consultants also opined that Plaintiff could perform simple, routine, repetitive tasks ("SRRTs") (see Tr. 88,

15

120). Indeed, the reconsideration level consultant found that Plaintiff remained "capable of <u>at least</u> SRRTs." (Tr. 116 (emphasis added).) Moreover, the ALJ gave only "some weight" to the initial level consultant (Tr. 32), and "more weight" to the reconsideration level consultant (Tr. 33). Thus, Plaintiff has not shown how the ALJ's according a moderate amount of weight (i.e., not significant or great weight) to an opinion that Plaintiff remained able to perform <u>at least</u> SRRTs conflicts with the ALJ's mental RFC determination limiting Plaintiff to unskilled work. See 20 C.F.R. §§ 404.1568(a), 416.968(a) (defining unskilled work as that "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time").

Second, as argued by the Commissioner (see Docket Entry 14 at 12), the VE testified that, given Plaintiff's RFC, he could still perform the job of "floor waxer" (Tr. 68), and the ALJ adopted that testimony and found at step five of the SEP that Plaintiff could perform the job of floor waxer (see Tr. 34). According to the <u>Dictionary of Occupational Titles</u> ("<u>DOT</u>"), the floor waxer job requires a Reasoning Development Level ("RDL") of 1, which involves no more than "simple one- or two-step instructions." <u>DOT</u> No. 381.687-034 ("Waxer, Floor"), 1991 WL 673262 (4th ed. rev. 1991).[7] Thus, even if the ALJ erred by not limiting Plaintiff to "very

---

[7] A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6. <u>See generally</u> DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development (GED)"), 1991 WL 688702.

short and simple instructions," that error would remain harmless, as Plaintiff would nevertheless remain capable of performing the floor waxer job. See generally Fisher, 869 F.3d at 1057 ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.").

Finally, Plaintiff maintains that "[t]he ALJ's assessment of the severity of [Plaintiff's] symptoms [wa]s also deficient under SSR 16-3p." (Docket Entry 12 at 10.) According to Plaintiff, "[t]he ALJ relie[d] on his own interpretation of raw medical data[, and a]s a lay person, an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" (Id. at 10-11 (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).) However, Plaintiff neither detailed what "raw medical data" the ALJ improperly relied on, nor otherwise demonstrated how the ALJ's evaluation of Plaintiff's symptom reporting qualified as "deficient." (Id.) Such failures foreclose relief. See Zannino, 895 F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes, 2014 WL 906220, at *1

17

n.1 ("A party should not expect a court to do the work that it elected not to do.").[8]

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

                                               /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                  **United States Magistrate Judge**

August 29, 2018

---

[8] Furthermore, for the reasons well-stated in the Commissioner's Memorandum in support of her Motion for Judgment on the Pleadings (see Docket Entry 14 at 12-14), the ALJ supported his analysis of Plaintiff's subjective symptoms with substantial evidence.